**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)                                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MOLLY MCGEE f/k/a** | : | |
| **MOLLY O'NEILL,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **13HOWARD11 LLC d/b/a** | : | |
| **WALNUT GARDEN,** | : | |
| | : | |
| **And** | : | |
| | : | |
| **FCM HOSPITALITY,** | : | |
| **Defendants.** | : | |

## CIVIL ACTION

Plaintiff, Molly McGee f/k/a Molly O'Neill (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against 13howard11 LLC d/b/a Walnut Garden and FCM Hospitality (hereinafter "Defendants"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").  In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in North Wales, PA.

3. Upon information and belief, 13howard11 LLC d/b/a Walnut Garden is a hospitality company with a location at 1708 Walnut Street, Philadelphia, PA 19103 and with corporate headquarters located at 901 N Delaware Avenue, Philadelphia, PA 19123.

4. Upon information and belief, FCM Hospitality is a hospitality company with a location at 1708 Walnut Street, Philadelphia, PA 19103 and with corporate headquarters located at 901 N Delaware Avenue, Philadelphia, PA 19123

5. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

6. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

7. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

8. The Court may properly maintain personal jurisdiction over Defendants because the Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

9. The Court may exercise original subject-matter jurisdiction over the instant action pursuant

2

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

10. The Court may also maintain supplemental jurisdiction over state and local law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendants is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

13. Plaintiff exhausted her administrative remedies under the PHRA and the PFPO.

14. On or about June 24, 2024, Plaintiff timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation against Defendants in violation of Title VII, the PHRA, and the PFPO.

15. The Charge was assigned EEOC Charge Number 530-2024-07089 and was dual filed with the Philadelphia Commission on Human Relations ("PCHR").

16. The PCHR designated the Complaint Number as 2025-01-03-19558.

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated April 23, 2026.

18. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal claims, more than one year after filing, but

within two (2) years of the issuance of the Right to Sue in this matter, as it relates to her PHRA and PFPO claims.

19. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

20. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

21. In March 2021, Defendants hired Plaintiff.

22. In May 2022, Defendants promoted Plaintiff to the position of General Manager.

23. Plaintiff was well qualified for her position and performed well.

## DEFENDANTS TRANSFERRED PLAINTIFF TO ITS WALNUT GARDEN LOCATION

24. In May 2023, Defendants transferred Plaintiff to its Walnut Garden location.

## PLAINTIFF REPORTED RACE DISCRIMINATION

25. On September 16, 2023, Plaintiff engaged in protected activity when she complained of race discrimination to Hugh Garrity (Caucasian), Regional Manager.

26. Plaintiff complained about Melissa Zielinski (Caucasian), Assistant General Manager, making racially discriminatory comments to staff.

27. Specifically, Zielinski told Hispanic staff that she was going to call Immigration and Customs Enforcement ("ICE") on them and have them deported.

28. The staff members complained to Plaintiff about Zielinski's racially discriminatory comments.

## DEFENDANTS DID NOT PROPERLY ADDRESS PLAINTIFF'S COMPLAINT OF RACE DISCRIMINATION

29. However, Garrity merely informed Dana Canalichio (Caucasian), Operations Manager, of Plaintiff's complaint and did not take further action.

4

30. In addition, Canalichio did not properly address her complaint.

## CANALICHIO INFORMED PLAINTIFF THAT SHE COULD NOT USE HER COMPANY CREDIT CARD FOR PARKING EXPENSES

31. On September 26, 2023, just ten (10) days after Plaintiff's complaint of race discrimination, Canalichio informed Plaintiff that she could no longer put her parking expenses on her company credit card.

32. Previously, Canalichio instructed Plaintiff not to use the company credit card for her parking fees while the Walnut Garden location was closed by Philadelphia Department of Licenses and Inspections ("L&I") beginning on June 27, 2023.

33. Plaintiff followed Canalichio's instructions.

34. On September 8, 2023, the Walnut Garden location reopened.

35. Plaintiff began to put her parking expenses on the company credit card as had been prior practice and in keeping with Canalichio's instructions.

36. Plaintiff had listed her parking fees on her expense reports without issue until now.

37. Plaintiff asked Canalichio if Defendants wanted her to pay her parking expenses from now on, but Canalchio did not respond.

## HUMAN RESOURCES FALSELY ACCUSED PLAINTIFF OF FRAUD AND DEDUCTED ABOUT HALF OF HER PAYCHECK

38. Later that day, on September 26, 2023, Anthony Dinkins, Human Resources emailed Plaintiff and informed her that Defendants were going to deduct all of her parking fees from her next paycheck.

39. Plaintiff complained about this and stated that she would not sign any documents agreeing to having her wages garnished.

5

40. Plaintiff then reviewed a preview of her upcoming paycheck and saw that Defendants had deducted approximately half of her pay.

41. Plaintiff complained to Dinkins about Defendants deducting approximately half of her paycheck without signing any documentation agreeing to this.

42. However, Dinkins responded by falsely accusing Plaintiff of fraud and stated that she was not required to sign any documentation regarding the deduction in her pay.

43. Plaintiff did not commit fraud and followed the instructions of Canalichio.

**DEFENDANTS TERMINATED PLAINTIFF**

44. The following day, on September 27, 2023, Garrity terminated Plaintiff for alleged low sales numbers.

45. However, Defendant later changed the alleged reason for Plaintiff's termination to misuse of a company credit card during Plaintiff's application for unemployment compensation benefits and subsequent employment.

46. Upon information and belief, the real reason for Plaintiff's termination was because she had engaged in protected activity when she complained of race discrimination.

47. Defendants retaliated against Plaintiff due to her complaint of race discrimination in violation of Title VII, the PHRA and the PFPO.

48. Defendants' conduct was willful or with reckless disregard to Plaintiff's Federal Statutory Rights.

**COUNT I – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

49. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

6

50. Plaintiff engaged in activity protected by Title VII when she complained about race discrimination.

51. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

52. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II – RETALIATION
### PENNSYLVANIA HUMAN RELATIONS ACT

53. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

54. Plaintiff engaged in activity protected by the PHRA when she complained about race discrimination.

55. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

56. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT III – RETALIATION
### PHILADELPHIA FAIR PRACTICES ORDINANCE

57. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

7

58. Plaintiff engaged in activity protected by the PFPO when she complained about race discrimination.

59. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

60. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff, Molly McGee f/k/a Molly O'Neill, requests that the Court grant her the following relief against Defendants:

(a)    Damages for past and future monetary losses as a result of Defendants' unlawful employment practices;

(b)    Compensatory damages for, *inter alia*, mental anguish, humiliation, and emotional pain and suffering as well as any other expenses incurred by Plaintiff due to Defendants' unlawful employment practices;

(c)    Punitive damages;

(d)    Liquidated damages;

(e)    Reasonable attorneys' fees;

(f)    Recoverable costs;

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the PHRA and the PFPO.

(j)      Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)      Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)      Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: July 22, 2026           **By:**  */s/David M. Koller*
                       David M. Koller, Esquire (Pa 90119)
                       Jordan D. Santo, Esquire (Pa 320573)
                       2043 Locust Street, Suite 1B
                       Philadelphia, PA 19103
                       215-545-8917
                       davidk@kollerlawfirm.com
                       jordans@kollerlawfirm.com

                       *Counsel for Plaintiff*

9